IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

DAVID I. BYRNES,

        Plaintiff,

v.

CORRECTIONS OFFICER
JEFFREY ANGEVINE,

        Defendant.

Civil Action No.
3:12-CV-1598 (GLS/DEP)

APPEARANCES:

FOR PLAINTIFF:

HINMAN, HOWARD & KATTEL, LLP
80 Exchange Street
P.O. Box 5250
Binghamton, NY 13902

DAVID I. BYRNES
80 Allen Street
Apt. 5
Johnson City, NY 13790

FOR DEFENDANT ANGEVINE:

[NO APPEARANCE]

OF COUNSEL:

DAWN J. LANOUETTE, ESQ.

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

# REPORT AND RECOMMENDATION

Plaintiff David I. Byrnes commenced this action in October 2012 against the County of Broome ("County") and Jeffrey Angevine, a corrections officer employed by the County, pursuant to 42 U.S.C. §1983, alleging that defendants deprived him of his civil rights.[1] As a basis for his claims, plaintiff maintains that he was assaulted by Angevine while incarcerated in the Broome County Jail. In his complaint, plaintiff seeks recovery of compensatory and punitive damages.

Plaintiff's claims against the County have been settled, and the County has been dismissed as a party. Defendant Angevine, while having been personally served with the summons and complaint, failed to answer or otherwise appear in this action. As a result, his default was entered, and the court subsequently granted default judgment on the issue of liability and referred the matter to me for the purpose of holding an inquest and making a recommendation concerning the amount of damages to be awarded against Angevine. The following constitutes my findings and recommendation based upon an inquest held on August 8, 2014.

---

[1] While plaintiff was acting *pro se* at the time this action was commenced, Stephen K. Cornwell, Jr., Esq., later appeared as plaintiff's attorney of record, including at a pretrial conference conducted by the court on March 15, 2013. *See* Minute Entry Dated Mar. 15, 2013. Attorney Cornwell subsequently moved for, and was granted, leave to withdraw as plaintiff's attorney of record in the action. Dkt. Nos. 34, 38. Dawn J. Lanouette, Esq., was thereafter appointed by the court to represent the plaintiff, *pro bono*, for the limited purpose of the damages inquest. Dkt. No. 39. The court expresses its appreciation to Attorney Lanouette for the highly competent and professional services rendered on behalf of plaintiff in this matter.

I.  BACKGROUND

In October of 2011, plaintiff was an inmate in the Broome County Jail as a result of an assault charge stemming from an alleged attack against a corrections officer. A jury trial was commenced in connection with the charge in Broome County Court on or about October 24, 2011.[2] On October 25, 2011, plaintiff was escorted to the intake area of the Broome County Jail in preparation for transportation to the courthouse for trial. After changing into civilian clothes, plaintiff was instructed by Angevine to remove his jacket. Plaintiff refused and asked to see a sergeant. After some discussion, the jacket was forcibly removed from plaintiff by Angevine, and plaintiff was instructed to stand, face-first, against a post.

Approximately five other corrections officers responded to the scene and stationed themselves around the plaintiff. Angevine then placed plaintiff in a chokehold from behind and dragged him to the ground. During the course of the incident, while plaintiff was lying prone on the ground, Angevine administered two kicks to the plaintiff's side. Plaintiff was then placed in restraints, brought to his feet, and ultimately taken to court. After court ended for the day, plaintiff received treatment of his injuries, which included swelling to the head and bruising to his lower lip, ribs, and back.

---

[2] Plaintiff was ultimately acquitted at that trial.

II. PROCEDURAL HISTORY

Plaintiff commenced this action on October 24, 2012. Dkt. No.1. Plaintiff's complaint named Broome County and Corrections Officer Jeffrey Angevine as defendants, and asserted federal and pendent state law claims related to the assault on October 25, 2011.[3] *Id.* at 1-2. Broome County answered plaintiff's complaint on December 18, 2012. Dkt. No. 6. Despite having been personally served with a copy of the summons and complaint on January 14, 2013, however, Angevine failed to answer or otherwise defend against the complaint prior to February 4, 2013, the deadline for doing so. As a result of that failure, plaintiff filed a request for the entry of defendant Angevine's default, which was entered by the clerk on March 28, 2013. Dkt. Nos. 12, 13.

On May 1, 2013, plaintiff moved for the entry of default judgment against Angevine, awarding him compensatory and punitive damages, as well as costs and attorney's fees. Dkt. No. 14. Plaintiff's motion was granted, in part, by order issued by Chief District Judge Gary L. Sharpe on June 3, 2013. Dkt. No. 15. In his order, Chief Judge Sharpe granted plaintiff's motion for default judgment as to compensatory and punitive damages, in amounts to be determined by the court, but denied plaintiff's

---

[3] Plaintiff's complaint asserts the following five causes of action against Angevine: (1) assault/battery, (2) harassment, (3) excessive force, (4) outrageous conduct, and (5) negligent infliction of emotional distress.

application for an award of costs and attorney's fees against Angevine, with leave to renew. *Id.* By text order subsequently issued on February 27, 2014, Chief Judge Sharpe referred the matter to me for the purpose of conducting an inquest to determine the amounts of compensatory and punitive damages to be awarded against Angevine. Dkt. No. 30. During the interim, plaintiff's claims against Broome County were resolved, and a stipulation and order of dismissal as to that defendant was filed on December 20, 2013. Dkt. Nos. 26, 27.

The required inquest was conducted by the court on August 8, 2014, at the United States Courthouse in Binghamton, New York. Minute Entry Dated Aug. 8, 2014. At the hearing, testimony was received from three witnesses, including plaintiff; Kevin J. Moore, a captain at the Broome County Jail; and Bonnie Dalton, plaintiff's girlfriend. *Id.* In addition, two exhibits were received in evidence, including a complaint in an earlier action brought by plaintiff against the Broome County Sheriff and several corrections workers employed at the facility involving an alleged assault on plaintiff in October 2010, offered as proof of a possible motive for Angevine's attack on him a year later.[4] Dkt. No. 41. Also admitted into evidence was a DVD reflecting video footage of the alleged assault on plaintiff by Angevine captured by a surveillance camera in the Broome

---

[4] Angevine was not named as a defendant in the prior action.

County Jail. *Id.*

III. DISCUSSION

A. Governing Evidentiary Principles

The recent inquest was conducted in accordance with Rule 55(b)(2) of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[t]he court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]" Fed. R. Civ. P. 55(b)(2); *House v. Kent Worldwide Machine Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010). Although the liability of Angevine has been established pursuant to Chief Judge Sharpe's entry of default judgment in favor of plaintiff, the amount of damages is not affected by that judgment. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."); *accord, Garden City Boxing Club, Inc. v. Giambra*, No. 02-CV-0839, 2004 WL 1698633, at *1 (W.D.N.Y. July 27, 2004).

B. <u>Damages Generally</u>

1. <u>Compensatory Damages</u>

When a plaintiff has been the subject of excessive force by a state actor, he is entitled to recover damages to compensate him for any actual loss suffered as a result of the violation. *Atkins v. N.Y. City*, 143 F.3d 100, 103 (2d Cir. 1998). In a case such as this, where a defendant has opted to default, rather than actively defend, a plaintiff nonetheless bears the burden of establishing a basis for an award of damages "with reasonable certainty." *House*, 359 F. App'x at 207; *accord, Peterson v. Syracuse Police Dep't*, No. 09-CV-0106, 2014 WL 803931 at *1 (N.D.N.Y. Feb. 27, 2014) (Kahn, J.). In the event a violation has been established, and no injuries are proven, plaintiff should be awarded nominal damages. *Atkins*, 143 F.3d at 103.

The purpose of a compensatory damage award in an action arising under 42 U.S.C. § 1983 is to provide the plaintiff, to the extent possible, just and fair compensation for any injury suffered as a result of a constitutional deprivation caused by the defendant. *Townes v. City of N.Y.*, 176 F.3d 138, 147 (2d Cir. 1999). The ultimate goal in awarding compensatory damages is to make a plaintiff whole. *Hollis v. City of Buffalo*, 28 F. Supp. 2d 812, 826 (W.D.N.Y. 1998). Compensatory damages can include compensation for any physical injury, pain and

7

suffering, mental anguish, shock and discomfort suffered as a result of a defendant's conduct. *Walz v. Town of Smithtown*, 46 F.3d 162, 170 (2d Cir. 1995) ("It is settled that a court may award damages for emotional suffering in a § 1983 case." (alterations, quotation marks omitted)). In determining the amount of compensatory damages to appropriately award, a court should consider amounts awarded in similar cases. *Hollis*, 28 F. Supp. 2d at 826.

### 2. Punitive Damages

When a plaintiff is awarded either actual or nominal damages in connection with a section 1983 claim the law permits, though does not require, that an award for punitive damages be entered. *Smith v. Wade*, 461 U.S. 30, 51 (1983); *accord, Wilson v. Aquino*, 233 F. App'x 73, 77 (2d Cir. 2007). The purpose of awarding punitive damages is to punish a defendant for extreme or outrageous conduct, and to deter or prevent the defendant and others like him from committing similar acts in the future. *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996). Punitive damages are available upon a finding that the defendant acted maliciously, recklessly, or callously with respect to plaintiff's rights. *Smith*, 461 U.S. at 56; *accord, Lee*, 101 F.3d at 808 ("Punitive damages are available in a [section] 1983 case when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

federally protected rights of others." (internal quotation marks omitted)).

Although the appropriate amount of punitive damages to award in any given case cannot be reduced to a precise scientific formula, the "legal system has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013). While an award of punitive damages must be sufficient to further the goals underlying such awards, the court must be vigilant to guard against excessive punitive damage awards. *Payne*, 711 F.3d at 94-95.

The determination of the amount to award is informed by three guideposts identified by the Supreme Court in its decision in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), addressing the due process constraints on an award of punitive damages. *Lee*, F.3d at 809. The *Gore* factors include (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to compensatory damages, and (3) sanctions for comparable conduct . *BMW of N. Am., Inc.*, 517 U.S. at 575; *Payne*, 711 F.3d at 101; *Lee,* 101 F.3d at 809.

C. Analysis

1. Compensatory Damages

The full extent of Angevine's use of force toward the plaintiff is depicted in the video footage secured from the surveillance camera in the Broome County Jail intake area. It confirms, as plaintiff testified, that Angevine forcibly removed plaintiff's jacket and thereafter Angevine and plaintiff had a brief conversation before plaintiff was forced to face a post, placed in restraints, and surrounded by Angevine and at least five other corrections officers. The video also reflects that, while plaintiff was standing face-first towards the post, Angevine, from behind, placed his arm around plaintiff in a chokehold, and brought him to the ground with the assistance of other officers.[5] Once Byrnes was on the ground, officers then attempted to place him in restraints. At one point while plaintiff was subdued on the floor, Angevine kicked plaintiff twice on the side of his body.[6] Plaintiff claims he suffered a bloody lip, some bruising, and neck and rib pain as a result of the use of force by Angevine. In addition,

---

[5] There was no testimony from the plaintiff at the inquest as to what precipitated Angevine's use of force. In light of the default judgment entered by Chief Judge Sharpe against Angevine, however, the court need not inquire into the circumstances leading up to the use of force. As noted above in Part III.A. of this report, a default judgment forecloses the issue of liability against the defaulting party. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

[6] Although plaintiff testified that he suffered bruises on the top of his head as a result of Angevine having administered blows to the head, the video surveillance footage does not substantiate that claim.

plaintiff claims that he suffers from residual injuries as a result of the incident, but failed to present any objective medical documentation to support those claims. For example, although plaintiff claims to suffer from arthritis and testified he suspects it stems from the assault by Angevine on October 25, 2011, he could not substantiate that testimony with any other evidence. Indeed, plaintiff acknowledged that no physician has linked his arthritis with the assault. Plaintiff did not suffer any out-of-pocket loss, including medical expenses, as a result of the incident.

In addition to physical injuries, plaintiff claims he suffered mental anguish as a result of the incident. Plaintiff testified that, because of the assault, he fears law enforcement officers and authority figures, does not sleep well, and experiences nightmares of the assault. Those claims were substantiated, in part, by testimony from Bonnie Dalton, who began dating the plaintiff in April 2012, and currently lives with him. During the hearing, however, plaintiff acknowledged suffering from pre-existing mental conditions, including depression and a personality disorder. It is not clear from the record whether plaintiff suffered from similar symptoms to the ones he now alleges are attributable to Angevine's use of force prior to the incident due to his pre-existing mental conditions.

The amounts awarded in excessive-force cases against police and corrections officers within this circuit run the gamut. Plaintiff's counsel

likens this case to *Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996), in which the court approved of an award of $150,000 to a plaintiff based upon a civil rights violation, and *DiSorbo v. Hoy*, 343 F.3d 172 (2d Cir. 2003), in which the court concluded a $250,000 damage award was appropriate. Accordingly, plaintiff seeks an award of compensatory damages in the $150,000 to $250,000 range. Those cases, however, involve uses of force that are far more egregious than the use of force used by Angevine in this case.

*Bender* involved a plaintiff originally arrested for disorderly conduct. *Bender*, 78 F.3d at 788. After she was handcuffed and placed inside a police van, matters escalated and, following a verbal disagreement with one of the arresting officers, plaintiff was struck in the mouth, made to endure twenty-four hours of confinement "under extremely unpleasant conditions" and an additional five hours of custody prior to arraignment and release, and the pendency of disorderly conduct and felony assault charges (stemming from her allegedly having bitten one of the officers) for six months prior to their dismissal. *Id.* at 788, 792. The plaintiff in that case also claimed to have suffered emotional damages, and presented evidence from an expert that she suffered from post-traumatic stress disorder. *Id.* at 792. The jury's award in that case totaled $300,700 and was struck down by the Second Circuit after concluding that the award

12

was both excessive and potentially duplicative. *Id.* at 792, 794. The Second Circuit instructed the trial court to order a new trial unless plaintiff agreed to remit $150,000 of the jury's award. *Id.* at 795.

In *DiSorbo*, one of the two named plaintiffs alleged that, after being arrested by members of the Schenectady City Police Department, one of the officers seized her from behind, grabbed her by the throat, slammed her against the wall, and choked her to a point where she was unable to breathe and began losing vision. *DiSorbo*, 343 F.3d at 177. After plaintiff kicked the officer, she was thrown to the ground and struck repeatedly as she laid face down and defenseless. *Id.* Plaintiff was subsequently examined by a paramedic with the Schenectady City Fire Department in a police holding cell and transported to a hospital emergency room where she remained for a few hours. *Id.* at 179. The paramedic's report noted that plaintiff had two large hematomas on her head. *Id.* A medical examination conducted by a physician on the following day revealed bruises throughout the plaintiff's upper body, pressure point bruises at the top of her neck and behind her ear, consistent with an alleged choking event, and bruises of various sizes on her head, right forehead, mandible, right shoulder, hands, elbow, spine, and behind her left ear. *Id.* at 179, 183-84. At trial, a jury awarded the plaintiff $400,000 in compensatory damages associated with her excessive force and battery claims. *Id.* at

184. On appeal, after canvasing comparable cases, the Second Circuit concluded that the jury's award fell outside of the reasonable range of awards and that compensatory damages in the amount of $250,000 would adequately compensate plaintiff. *Id.* at 183-86.

At the lower end of the spectrum is the award in *Peterson v. Lester*, No. 09-CV-0106, 2013 WL 3822080 (N.D.N.Y. July 23, 2013) (Kahn, J.). In that case, which also involved a defaulting defendant, the court considered an excessive-force claim asserted by a plaintiff who was arrested. *Peterson*, 2013 WL 3822080, at *3. The court found that plaintiff had suffered only *de minimis* injuries including "minor cuts, bleeding and bruises, but no fractures or ongoing treatment." *Id.* at *4. After concluding that the plaintiff's evidence failed to establish a nexus between the excessive force and plaintiff's later-developed headaches, the court awarded nominal damages in the amount of one dollar and no punitive damages, and upheld that award on motion for reconsideration.[7] *Id.* at *4-5; *Peterson*, 2014 WL 803931, at *5.

Angevine's actions in this case, as well as plaintiff's injuries, are far less compelling than the circumstances set forth in *Bender* and *DiSorbo*.

---

[7] The plaintiff in that case claims that, during the course of the arrest, police officers threw him to the floor, beat him with a flashlight, tasered him approximately ten times, and kicked, punched, and pepper-sprayed him. *Peterson*, 2013 WL 3822080, at *1.

14

This case involves facts more akin to those recently presented in *Anderson v. Aparicio*, No. 09-CV-1913, 2014 WL 2619062 (E.D.N.Y. June 12, 2014). In that case the plaintiff alleged that, after being arrested on an outstanding warrant, he was removed from a jail cell, taken to the ground by the defendant and other officers, and repeatedly punched in the face and on the back of the head. *Anderson*, 2013 WL 2619062, at *3. Photographs introduced in evidence at the trial substantiated that plaintiff suffered significant facial injuries. *Id.* Those photographs were buttressed by medical documents describing at least some of the injuries suffered. *Id.* Following a trial, the jury returned a verdict awarding compensatory damages in the amount of $20,000, and an additional amount of punitive damages in the sum of $75,000. *Id.* at *4; *see also O'Hara v. McAvoy*, No. 11-CV-3990, 2013 WL 4507067 (E.D.N.Y. Aug. 22, 2013), *aff'd* --- F. App'x ----, 2014 WL 2749831 (2d Cir. June 18, 2014) (upholding jury award of $50,000 in compensatory damages to a seventeen year-old plaintiff who, after being punched in the face and falling to the ground, was punched at least four more times while attempting to shield his body, in the presence of six officers, but failing to award punitive damages).

It should be noted that many of the cases in which larger amounts of compensatory damages have been awarded and upheld involve circumstances not presented in this case. For example, some of the cases

15

involve claims of false arrest, malicious prosecution, or periods of unlawful confinement. *See, e.g., King v. Macri*, 993 F.2d 294 (2d Cir. 1993) (awarding $75,000 in compensatory damages to a victim of malicious prosecution who was beaten while in custody and confined for two months); *Gentile v. Cnty. of Suffolk*, 926 F.2d 142 (2d Cir. 1991) (upholding an aggregate award of $150,000 where police misconduct resulted in several days of wrongful confinement and the pendency of criminal charges for six years); *Gardner v. Federated Dep't Stores, Inc.*, 907 F.2d 1348 (2d Cir. 1990) (reducing award of $150,000 in compensatory damages to $50,000 for false imprisonment that lasted several hours). Other cases have involved sexual assaults on plaintiffs by police or corrections officials. *See, e.g. Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997) (approving compensatory damage award of $250,000, but suggesting a reduction of a $500,000 punitive damage award to $200,000 in a case involving a plaintiff who was sexually assaulted by a corrections officer); *Amador v. Galbrieath*, No. 10-CV-6702, 2013 WL 1755784 (W.D.N.Y. Apr. 24, 2013) (following entry of a default judgment, awarding compensatory damages in the amount of $250,000 and punitive damages of $250,000 to a plaintiff who was sexually assaulted by a corrections officer); *Ortiz v. Lasker*, No. 08-CV-6001, 2010 WL 3476017 (W.D.N.Y. Aug. 30, 2010) (following the entry of a default judgment, awarding

$250,000 in compensatory damages and $250,000 in punitive damages to a plaintiff who was raped on two separate occasions by a corrections officer); *Cash v. Cnty. of Erie*, No. 04-CV-0182, 2009 WL 3199558 (W.D.N.Y. Sept. 30, 2009) (awarding $150,000 in compensatory damages and $500,000 in punitive damages to a plaintiff who was raped by the defendant while being held as a pretrial detainee in the Erie County Holding Center).

In contrast to the foregoing cases, the facts in this matter involve only allegations of excessive force, which, according to the surveillance video footage and plaintiff's testimony, included forcibly removing plaintiff's jacket, placing him in a chokehold and forcing the plaintiff to the ground, and then kicking plaintiff twice while he was subdued by other officers. Undeniably, Angevine's actions are not to be condoned. Nonetheless, given the relatively modest nature of the assault and resulting injuries, I conclude that a compensatory damage award of $10,000 would adequately compensate the plaintiff in this case.

### 2. Punitive Damages

In addition to compensatory damages, in granting default judgment Chief Judge Sharpe also concluded that the plaintiff is entitled to punitive damages, and I concur. Dkt. No. 15 at 2. As the Second Circuit is noted, "[p]olice brutality cannot be tolerated in our society, and punitive damages

17

awards serve a critical role in deterring such misconduct." *DiSorbo*, 343 F.3d at 188.

In assessing punitive damages and determining the amount to recommend I have considered the *Gore* factors, as well as comparable cases. In this instance, where the compensable injury suffered by the plaintiff was relatively minimal, but the reprehensibility of the defendant's conduct was significant, a higher ratio of punitive damage awards to compensatory damages is appropriate. *Payne*, 711 F.3d at 102; *accord, Medina v. Donaldson*, No. 10-CV-5922, 2014 WL 1010951, at *16 (E.D.N.Y. Mar. 14, 2014). Based upon the circumstances presented, I conclude that a punitive damage award of $15,000 is appropriate and will adequately deter Angevine and others from engaging in the type of conduct involved in this case. *See Medina*, 2014 WL 1010951 at *18 (upholding jury awards of $5,000 in compensatory damages and $16,000 in punitive damages where the jury found a New York City police officer liable for excessive force).

II. SUMMARY AND RECOMMENDATION

Based upon the evidence adduced during a recent inquest hearing, and a survey of other cases involving similar facts, I conclude that awards of compensatory and punitive damages, in the amounts of $10,000 and

$15,000, respectively, are appropriate.[8] Accordingly, it is hereby

RECOMMENDED that the court enter judgment in favor of plaintiff David Byrnes and against defendant Jeffrey Angevine awarding plaintiff compensatory damages in the amount of $10,000 and punitive damages in the sum of $15,000, for a total damage award of $25,000, with leave to plaintiff's attorneys to file applications with the court seeking recovery of costs and attorney's fees pursuant to 42 U.S.C. § 1988.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[8] In his decision granting default judgment, Chief Judge Sharpe denied plaintiff's application for costs and attorney's fees, with leave to renew. Plaintiff has been represented by two attorneys in this case, including Attorney Cornwell, who, when granted leave to withdraw, did not relinquish any right to seek costs and attorney's fees in the case. In addition, Attorney Lanouette was assigned to the case by the court to represent the plaintiff, *pro bono*, in connection with the inquest. Because plaintiff has prevailed in his section 1983 claim against Angevine, both of his attorneys are now entitled to apply to the court for costs and attorney's fees to be awarded against Angevine. *See* 42 U.S.C. 1988(b) ("In any action or proceeding to enforce a provision of sections . . . 1983, . . . the court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fee as part of the costs[.]").

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: September 26, 2014
Syracuse, New York

David E. Peebles
U.S. Magistrate Judge